RON QUIJADA (SBN 363726)
LAW OFFICES OF RON QUIJADA
750 E. GREEN STREET, SUITE 302
PASADENA, CA 91101
TELEPHONE: (626) 437-0724
FACSIMILE: (626) 604-8329
E-MAIL: RON@QUIJADALEGAL.COM

ATTORNEY FOR PETITIONER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **EDGAR MARTINEZ GONZALEZ**<br>Petitioner,<br><br>vs.<br><br>**FERETI SEMAIA, Warden, Adelanto ICE Processing Center; JAIME RIOS, Field Office Director, Los Angeles Field Office, ICE; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States,**<br><br>Respondents | Case No.: 5:26-cv-6755<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**A# 204-673-188** |

## INTRODUCTION

1. Petitioner EDGAR MARTINEZ GONZALEZ is a native and citizen of Mexico who has been physically present in the United States since approximately 2000, when he was six years old.

2. Petitioner is currently detained at the ADELANTO ICE PROCESSING CENTER in Adelanto, California by immigration authorities.

3. Petitioner brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his unlawful arrest and detention by the United States Immigration and Customs Enforcement ("ICE").

4. On or about October 29, 2026, Petitioner was arrested by officers of U.S. Immigration and Customs Enforcement ("ICE") while driving to work in a truck used for his landscaping job. He was arrested in Anaheim, California around 7:00 a.m. to 7:20 a.m. Petitioner reports that ICE officers observed him at or near a gas station, followed his truck for approximately ten to twenty minutes, and then intercepted and stopped it. At the time, Petitioner was not committing a crime, and there was no indication that he was about to commit a crime. Before taking him into custody, ICE officers did not ask whether he had Deferred Action for Childhood Arrivals ("DACA"), employment authorization, or any other immigration status.

5. Petitioner was arrested without being shown an arrest warrant, without being told that a warrant had been issued for him, and without notice of his impending arrest.

6. Petitioner has lived in the United States for approximately twenty-six years, since he was six years old. He previously received employment authorization under DACA and has a DACA application pending. He graduated from high school in the United States, has filed federal income tax returns, works in the landscaping industry, and is Catholic. No changes circumstances exist in this case because Petitioner was not arrested or convicted of a criminal record.

7. Petitioner's detention is unlawful because it:

(1) violates 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. § 287.8, because Petitioner was stopped without reasonable suspicion and arrested without a warrant and outside the narrow warrantless-arrest exception, in violation of the injunction entered in *Vasquez Perdomo v. Noem* in the Central District of California;

(2) violates his right to procedural due process under the Fifth Amendment;

(3) violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), as arbitrary, capricious, and an abuse of discretion; and

(4) violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), and (D), as not in accordance with law, in excess of statutory authority, and without observance of procedure required by law.

8. Accordingly, Petitioner seeks a writ of habeas corpus ordering his immediate release from ICE custody because he contends that his continued detention is unlawful.

## **JURISDICTION AND VENUE**

9. This Court has jurisdiction under 28 U.S.C. § 2241 (federal habeas statute); 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 2201–2202 (declaratory judgment). This action arises under the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act (INA), United States Constitution Article I, Section 9 (Suspension Clause).

10. Venue is proper in the Central District of California under 28 U.S.C. § 2241 because Petitioner is currently detained within this District at the Adelanto ICE Processing Center. Venue properly lies within the Central District of California under 28 U.S.C.§ 1391, because this is a civil action in which Respondents are agencies of the United States, Petitioner is detained in this District, and a substantial part of the events or omissions giving rise to this action occurred in the district.

/ / /

## PARTIES

11. Petitioner EDGAR MARTINEZ GONZALEZ is a native and citizen of Mexico currently detained at the Adelanto ICE Processing Center in Adelanto, California.

12. Respondent FERETI SEMAIA is the warden of the Adelanto ICE Processing Center and is sued in his official capacity. The Adelanto ICE Processing Center has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner.

13. Respondent JAIME RIOS is the ICE Field Office Director of the Los Angeles ICE Field Office and is sued in his official capacity. The Field Office Director is responsible for the detention of Petitioner.

14. Respondent TODD LYONS is the Acting Director of U.S. Immigration and Customs Enforcement ("ICE") and is sued in his official capacity. ICE is responsible for the detention of Petitioner.

15. Respondent MARKWAYNE MULLIN is the Secretary of the Department of Homeland Security ("DHS"), and is sued in his official capacity. The Secretary of Homeland Security is charged with the administration and enforcement of immigration laws. 8 U.S.C. § 1103(a).

16. Respondent TODD BLANCHE is the Acting Attorney General of the United States and is sued in his official capacity as the head of the Department of Justice. The Attorney General is responsible for the fair administration of the laws of the United States.

/ / /

/ / /

/ / /

/ / /

/ / /

## STATEMENT OF FACTS

17. Petitioner EDGAR MARTINEZ GONZALEZ ("Petitioner") is a native and citizen of Mexico. His Alien Registration Number is A204-673-188. Petitioner is currently detained by ICE at the Adelanto ICE Processing Center in Adelanto, California. See https://locator.ice.gov/odls/

18. Petitioner entered the United States in approximately 2000, when he was six years old. He has continuously resided in the United States since that time, for approximately twenty-six years.

19. Petitioner previously received employment authorization under DACA and has a DACA application pending. **(See Exhibit 1 – Employment Authorization Document; Exhibit 2 – Pending DACA Application.)**

20. Before his detention by ICE, Petitioner resided with his family at 727 S. Lyon Street, Apartment B108, Santa Ana, California 92705. (**See Exhibit 3 – Proof of Residence.)**

21. Petitioner has longstanding family, residential, and community ties in Southern California. He attended and graduated from high school in the United States, has filed federal income tax returns, and has worked in landscaping. Through his employment, he supports himself and contributes to the local economy. **(See Exhibit 4 – High School Diploma; Exhibit 5 – Income Tax Returns and Forms W-2.)**

22. Petitioner is also Catholic. (See Exhibit 6 – Church Certificate.)

23. Petitioner has no criminal history in the United States. He has never been arrested or convicted of a criminal offense.

## ARREST BY ICE

24. On or about October 29, 2026, Petitioner was traveling to work in a truck used for his landscaping employment. During the trip, he stopped at a gas station. He was arrested in Anaheim, California around 7:00 a.m. to 7:20 am.

/ / /

25. Petitioner reports that ICE officers observed him at or near the gas station and then followed his truck for approximately ten to twenty minutes.

26. While Petitioner was driving, ICE officers intercepted and stopped his vehicle and took him into custody.

27. Before taking Petitioner into custody, ICE officers did not ask whether he had DACA, employment authorization, or any other immigration status.

28. Before arresting Petitioner, ICE officers did not ask him for his name or request that he identify himself.

29. At no time before his arrest did ICE officers show or present Petitioner with a judicial or administrative arrest warrant. Nor did ICE officers tell Petitioner that an arrest warrant had been issued for him.

30. ICE officers did not inform Petitioner that he posed a danger to the community or that he was likely to escape before an immigration arrest warrant could be obtained, and Petitioner was not advised of any individualized flight-risk or dangerousness determination before ICE took him into custody.

31. At the time of the stop, Petitioner was on his way to work. He was not committing, or preparing to commit, any crime.

32. Petitioner's father was a passenger in the truck and was also arrested during the encounter. Petitioner reports that his father was unable to drive the vehicle and was arrested due to being unable to drive.

33. Petitioner had an established residence, employment history, and substantial family and community ties. He had also previously received employment authorization from U.S. Citizenship and Immigration Services ("USCIS") under DACA, and has a DACA application pending.

34. Through the DACA process, DHS already possessed Petitioner's biographical information, fingerprints, and residence address, and had previously conducted background checks on him.

35. Petitioner has not received a custody determination or a bond hearing before an Immigration Judge.

36. As a result of his arrest and detention, Petitioner has been separated from his family, his employment, and the community in which he has lived since childhood.

## LEGAL BACKGROUND

37. The following legal principles govern Petitioner's claims for habeas corpus relief. Although Congress has authorized the Executive Branch to arrest and detain certain noncitizens under the Immigration and Nationality Act ("INA"), that authority remains subject to the Constitution, federal statutes, and longstanding principles governing executive detention. As discussed below, the Great Writ of habeas corpus provides the traditional means by which federal courts review the legality of immigration detention and remedy constitutional violations.

### A. Detention of Non-Citizens Under the INA

38. The Immigration and Nationality Act (INA) prescribes distinct forms of detention for noncitizens in removal proceedings, distinguished primarily by the status of the noncitizen at the time of apprehension.

39. First, 8 U.S.C. § 1226 authorizes detention of noncitizens in standard removal proceedings before an immigration judge. Individuals detained under § 1226(a) are entitled to a bond hearing to determine eligibility for release. 8 C.F.R. §§ 1003.19(a), 1236.1(d). Noncitizens who have been admitted, or who are physically present in the interior of the United States, are subject to detention under § 1226(a).

40. Second, noncitizens arrested, charged with, or convicted of specified criminal offenses are subject to mandatory detention under 8 U.S.C. § 1226(c).

41. Third, the INA mandates detention for noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1), and for other recent arrivals seeking ad-

mission under § 1225(b)(2). These provisions are designed for the border context and for individuals seeking admission.

42. Finally, the Act provides for detention of noncitizens previously ordered removed, including those in withholding-only proceedings. 8 U.S.C. § 1231(a)–(b).

**B. Habeas Corpus is the Traditional Means of Challenging Unlawful Executive Detention**

43. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to a petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).

44. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A noncitizen in immigration custody may bring a § 2241 petition on the ground that his detention violates the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

45. The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence. *Walker v. Johnston,* 312 U.S. 275, 286 (1941) ("On a hearing, [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence."); *Parke v. Raley,* 506 U.S. 20, 31 (1992); *Sumner v. Mata,* 449 U.S. 539, 551 (1981).

/ / /

**C. Civil Immigration Detention is Subject to Constitutional Limitations**

46. Congress has authorized immigration detention under several provisions, including 8 U.S.C. §§ 1226 and 1231. That authority is not unlimited. Immigration detention is civil, not criminal, and remains subject to the Constitution's constraints.

47. The Supreme Court has repeatedly recognized that civil immigration detention serves limited regulatory purposes, principally ensuring a noncitizen's appearance at removal proceedings and protecting the community from danger. Because immigration detention is regulatory rather than punitive, continued detention must bear a reasonable relationship to those legitimate governmental interests. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527-28 (2003); *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

**D. The Fifth Amendment Requires Constitutionally Adequate Procedures before the Government May Deprive an individual of Physical Liberty**

48. The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id*. at 690; see also *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

49. A procedural due process claim involves two inquiries: first, whether the challenged government action implicates a protected liberty interest; second, if so, what process is constitutionally due before that interest may be taken. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); accord *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property" (emphasis in original)).

50. Where a protected liberty interest is at stake, courts apply the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

51. In *Mathews*, the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335; see *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context");

52. Because the government's discretion to detain individuals under 8 U.S.C. § 1226(a), and to revoke custody decisions under § 1226(b), is not "unlimited," that discretion must comport with the Mathews framework and constitutional due process more broadly. *Zadvydas*, 533 U.S. at 698.

**E. An Arrest Warrant is Required**

53. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings.

54. The Statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

55. Under 8 C.F.R. §236.1(b)(1), a noncitizen may only be arrested and detained pursuant to the Form I-200 Administrative Warrant if it is issued by an authorized official: At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest.

56. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter. 8 C.F.R. § 236.1(b)(1).

**F. A warrantless arrest is valid if the government satisfies the limited exceptions under 8 U.S.C. § 1357(a)(2)**

57. Immigration officers are authorized to make warrantless arrests in limited circumstances. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation ... regulating the admission, exclusion, expulsion, or removal of aliens," or when an officer has reason to believe (i) the noncitizen is in the United States in violation of such laws or regulations and (ii) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4) – (5) (providing other circumstances that justify warrantless arrest).

**G. Deferred Action for Childhood Arrivals (DACA)**

58. DACA is a policy announced by DHS on June 15, 2012, under which the agency may defer removal action against certain individuals who were brought to the United States as children, who have resided here continuously, and who satisfy educational and background requirements. See *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ("*Regents*"). A recipient is granted de-

ferred action for a renewable two-year period and may apply for and receive employment authorization. *Id.*; 8 C.F.R. § 274a.12(c)(14).

59. To obtain and renew DACA, an individual must submit biographical information, his residence address, and biometrics to USCIS and must pass background checks. In granting DACA, DHS makes a discretionary determination to forbear from removal action against the recipient, who thereafter lives openly, works, and pays taxes in reliance on that determination. Although deferred action does not confer lawful immigration status, it reflects the agency's own determination about the individual's enforcement priority, and DHS retains in its own records the information that identifies him, shows where he lives, and shows that he has satisfied the program's requirements.

60. In *Regents*, the Supreme Court held that the rescission of DACA was subject to judicial review under the Administrative Procedure Act and that an agency acting in this area must consider the serious reliance interests of DACA recipients, who have taken jobs and built lives in reliance on the program. 591 U.S. 1.

**COUNT ONE**

**Unlawful Stop, Warrantless Arrest, and Detention in Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2), 8 C.F.R. § 287.8, and the Injunction Entered in *Vasquez Perdomo v. Noem***

61. Petitioner repeats, re-alleges, and incorporates by reference the foregoing allegations as though fully set forth herein.

62. Congress has authorized immigration officers to arrest a noncitizen in the interior of the United States in only two ways. The default rule is arrest on a warrant: "[o]n *a warrant* issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). By regulation, that warrant is the Form I-200, Warrant for Arrest of Alien, which may be issued only by the supervisory immigration officers enumerated in 8 C.F.R. § 287.5(e)(2). 8 C.F.R. §

236.1(b)(1). The warrant is not a formality; it is the statutory precondition to arrest and detention under § 1226(a).

63. The only exception relevant here is narrow. An immigration officer may arrest without a warrant only if the officer "has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation *and* is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). Both prongs are required. "Reason to believe" under § 1357(a)(2) is the equivalent of probable cause. *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). And the Supreme Court has made clear that a warrantless civil immigration arrest is permitted only where the person "is likely to escape before a warrant can be obtained." *Arizona v. United States*, 567 U.S. 387, 408 (2012).

64. DHS's own regulations codify the same rule: "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). The regulations further require that, at the time of arrest, the officer "[i]dentify himself or herself as an immigration officer who is authorized to execute an arrest" and "[s]tate that the person is under arrest and the reason for the arrest." 8 C.F.R. § 287.8(c)(2)(iii).

65. Here, no arrest warrant was ever shown, served, or provided to Petitioner. On or about October 29, 2026, Petitioner was driving to work in a truck used for his landscaping employment when ICE officers, who had followed him for approximately ten to twenty minutes after observing him at or near a gas station, intercepted and stopped his vehicle and took him into custody. Petitioner was not committing or preparing to commit a crime. Before arresting him, the officers did not ask whether he had DACA, employment authorization, or any other immigration status.

66. At no time before his arrest did any officer show or present Petitioner with an arrest warrant. Nor did any officer tell Petitioner that he posed a danger to the community or was likely to escape before a warrant could be obtained, or advise him of any individualized flight-risk or dangerousness determination.

67. Without a warrant, Respondents' arrest of Petitioner was lawful only if, at the moment of arrest, the arresting officers had particularized probable cause to believe both that Petitioner was unlawfully present *and* that he was likely to escape before a warrant could be obtained. 8 U.S.C. § 1357(a)(2). Neither prong can be satisfied on these facts.

68. First, the officers could not have formed an individualized "reason to believe" that Petitioner was in the United States in violation of the immigration laws. They did not ask whether he had DACA, employment authorization, or any other status. Nothing about Petitioner's conduct, driving a work truck to his job after stopping at a gas station, suggested any immigration violation. Had the officers inquired, or consulted DHS's own records, they would have learned that DHS previously granted Petitioner employment authorization under DACA and that he has a DACA application pending. An officer who arrests a person without first learning anything about his status has no particularized basis to conclude that he is a removable noncitizen.

69. Second, there was no likelihood of escape. Petitioner has lived in the United States for approximately twenty-six years, since he was six years old. He graduated from high school here, has filed federal income tax returns, works in landscaping, and is Catholic, and has no criminal history. **(See Exhibits 1–6.)** Through DACA, Petitioner placed his biographical information, fingerprints, and residence address in DHS's hands, and he lived at a fixed address in Santa Ana, California. Throughout the ten to twenty minutes in which ICE officers followed his truck, Petitioner continued on his route to work. Nothing about that conduct

suggested flight. A person with these ties and a known address, who is commuting to a job, is not "likely to escape before a warrant can be obtained."

70. Nor were there exigent circumstances. Petitioner was not fleeing, resisting, or evading; he was driving to work. The officers followed his truck for approximately ten to twenty minutes before stopping it, which gave them ample time to seek an administrative warrant from an authorized supervisory officer. Nothing prevented them from doing so. The decision to proceed without a warrant was a choice, not a necessity.

71. The arrest also violated the injunction entered in *Vasquez Perdomo v. Noem*, No. 2:25-cv-05605-MEMF (C.D. Cal.). On September 2, 2026, the Court in *Vasquez Perdomo* enjoined Respondents, within the Central District of California, from conducting warrantless immigration arrests absent a pre-arrest, individualized determination that the person is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2).

72. Petitioner was arrested in Orange County, California within the Central District, approximately eight weeks after that injunction issued, and Respondents DHS and ICE are bound by it. Petitioner's warrantless arrest, made without any inquiry into his status and without any individualized likelihood-of-escape determination, is exactly the conduct the injunction prohibits.

73. Respondents' violation of the *Vasquez Perdomo* injunction is an additional and independent ground for relief. This Court should not permit Respondents to retain custody of Petitioner obtained through conduct that a court of this District has already ordered them to stop.

74. Because Petitioner's custody originates in a stop and arrest that violated 8 U.S.C. §§ 1226(a) and 1357(a)(2), 8 C.F.R. § 287.8(b)(2) and (c)(2), and the *Vasquez Perdomo* injunction, Petitioner's detention is unlawful and he is entitled to immediate release.

/ / /

**Remedy**

75. Accordingly, this Court should join the numerous courts in the Ninth Circuit in finding that the government's noncompliance with Section 1226(a) and the warrantless-arrest limits of Section 1357(a)(2) warrants release. See, e.g., *Reyes v. Santacruz, Jr.*, Case No. 5:26-cv-03394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026); *Garcia-Maya v. Mattos*, Case No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *7 (D. Nev. July 7, 2026); *Rodas-Dieguez v. Noem*, Case No. 3:26-cv-00976-RBM-MMP, 2026 WL 549910, at *1 (S.D. Cal. Feb. 26, 2026); *Maciel v. Noem*, Case No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026); see also *Moctezuma v. Henkey*, Case No. 1:25-cv-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

76. As these courts have found, release is an appropriate remedy given the nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). *Rodriguez Diaz*, 53 F.4th at 1202. As discussed, these protections include: (1) the requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an Immigration Judge at a bond hearing; (4) the right to appeal an adverse Immigration Judge bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an Immigration Judge based on changed circumstances. Section 1226(a) and its implementing regulations therefore provide "several layers of review" to protect against erroneous deprivations of liberty. *Rodriguez Diaz*, 53 F.4th at 1202.

/ / /

## COUNT TWO

### Violation of the Fifth Amendment – Right to Procedural Due Process

77. Petitioner repeats, re-alleges, and incorporates by reference the foregoing allegations as though fully set forth herein.

78. The Due Process Clause of the Fifth Amendment protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. Petitioner, who has lived in the United States for approximately twenty-six years, since he was six years old, plainly holds a protected liberty interest.

79. Because Petitioner has a protected liberty interest, the question is what process was due before Respondents could take it. That question is answered by the three-factor test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which the Ninth Circuit applies to due process challenges to immigration detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). Each *Mathews* factor weighs decisively in Petitioner's favor.

**A. The Private Interest**

80. The first factor examines "the private interest that will be affected by the official action." *Mathews*, 424 U.S. at 335. Here the interest is freedom from physical confinement, "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion). Petitioner is not merely subject to reporting conditions; he is held in a secure detention facility in Adelanto, separated from his home, his work, his family, and the community in which he has lived since childhood.

81. Petitioner's interest is heightened by the depth of his ties to this country. He has lived here continuously since approximately 2000, since the age of

six. He grew up and graduated from high school here, has supported himself through landscaping work, has filed federal income tax returns, and previously held employment authorization under DACA. He has no criminal record. Every day of detention inflicts concrete harm on Petitioner and his family, harm that cannot be undone by a later ruling.

82. Petitioner's interest is heightened further by his DACA history and by the circumstances of his arrest. DHS itself previously exercised its discretion to grant Petitioner employment authorization under DACA after reviewing his background, and Petitioner has a DACA application pending. See *Regents*, 591 U.S. 1. A person whom DHS has itself vetted and permitted to work, and who was arrested while commuting to that work, has an especially strong claim that his detention is not necessary to serve any legitimate governmental purpose.

83. Many district judges have granted relief in cases analogous to this one, that is, in cases where a noncitizen obtained a protected liberty interest because of a prior government finding that he was neither a flight risk nor a danger to the community (whether through a grant of DACA or in some other way), and where the government deprived the noncitizen of that liberty interest without first affording notice and an opportunity to be heard. See, e.g., *Anderson v. Chernut*, No. 26-cv-01960, 2026 WL 809990 (E.D. Cal. Mar. 24, 2026); *M.Z. v. Wofford*, No. 26-cv-06461, 2026 WL 2606891 (E.D. Cal. Sept. 2, 2026); *Nepal S. v. Warden, Golden State Annex Detention Facility*, No. 26-cv-06126, 2026 WL 2363564 (E.D. Cal. Aug. 13, 2026); *Carlos Eduardo D.J. v. Mullin*, No. 1:26-cv-04029-MWJS, 2026 WL 1508426 (E.D. Cal. May 29, 2026). This Court should likewise conclude that those decisions reached the correct result under the current state of Supreme Court and Ninth Circuit precedent.

/ / /

/ / /

/ / /

**B. The Risk of Erroneous Deprivation Is High**

84. The second factor considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335.

85. Here, the risk of error was not merely high; Respondents eliminated every procedural safeguard that Congress and DHS placed between an immigration officer and a noncitizen's liberty.

86. **No warrant.** The warrant requirement of 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(b)(1) is itself a procedural safeguard: it interposes the judgment of an authorized supervisory officer, see 8 C.F.R. § 287.5(e)(2), before a person is seized. Petitioner was never shown or provided a warrant, and on information and belief none existed. The deprivation of his liberty was therefore decided by field officers alone, with no review by anyone.

87. **No individualized determination.** The officers did not ask whether Petitioner had DACA, employment authorization, or any other immigration status before arresting him. They therefore made no individualized determination that he was removable, and no determination that he was likely to escape, as 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) require. A single question, or a check of DHS's own records, would have revealed his DACA history. A seizure made without any inquiry into the facts carries the greatest possible risk of error.

88. **No notice of a lawful basis.** The officers did not, as 8 C.F.R. § 287.8(c)(2)(iii) requires, state a lawful reason for the arrest. They did not tell Petitioner that a warrant had issued, that he was suspected of an immigration violation, or that he was dangerous or likely to escape.

89. **No meaningful custody determination.** Petitioner was not advised of any individualized flight-risk or dangerousness determination, and nothing indicates that any officer considered that he has lived in the United States for approximately twenty-six years, since the age of six; that he was granted

employment authorization under DACA; that he is steadily employed; and that he has no criminal history. Petitioner has also not received a bond hearing before an Immigration Judge.

90. The probable value of additional safeguards is substantial, and the safeguards themselves are modest. A warrant reviewed by an authorized officer, a pre-arrest individualized determination of likelihood of escape, and a prompt custody hearing before a neutral decisionmaker would each have exposed what the record already shows: that Petitioner is neither a flight risk nor a danger. Where liberty is at stake, the Ninth Circuit has required that the Government justify continued immigration detention by clear and convincing evidence before a neutral adjudicator. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011). Petitioner received no hearing of any kind.

91. *Rodriguez Diaz* does not counsel otherwise. There, the petitioner had received a bond hearing before an Immigration Judge and had access to further administrative review, and the court held that those existing § 1226(a) procedures were constitutionally adequate in his circumstances. 53 F.4th at 1209–13. Petitioner, by contrast, received none of the procedures *Rodriguez Diaz* relied upon: no warrant, no individualized determination, and no hearing.

**C. The Government's Interest Does Not Justify Dispensing with Process**

92. The third factor weighs "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Petitioner acknowledges that the Government has legitimate interests in enforcing the immigration laws, ensuring appearance at proceedings, and protecting the community. See *Zadvydas*, 533 U.S. at 690–91; *Rodriguez Diaz*, 53 F.4th at 1208.

93. But none of those interests is served by detaining Petitioner without process. The Government's interest in ensuring appearance is minimal where, as here, Petitioner has a stable residence in Santa Ana, steady employment, and

community roots that give him every incentive to comply with any proceedings, and where DHS already holds his biometrics and address through the DACA process. The Government's interest in public safety is minimal where Petitioner has no criminal record. Civil immigration detention is permissible only insofar as it serves these regulatory purposes. *Zadvydas*, 533 U.S. at 690.

94. The fiscal and administrative burden of the procedures Petitioner seeks is negligible. Obtaining an administrative warrant from a supervisory officer before arresting a person who is not fleeing imposes no meaningful burden. Immigration Judges conduct custody redetermination hearings every day. And detention itself is costly to the Government; releasing a person who poses no flight risk or danger saves public resources. See *Hernandez v. Sessions*, 872 F.3d 976, 990–91, 996 (9th Cir. 2017). The Government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

**D. Balancing the Factors**

95. All three *Mathews* factors favor Petitioner. His private interest in liberty is at its apex; the risk of error was maximized by a stop and arrest made without a warrant, without any inquiry into his status, and without any individualized determination; and the Government's interest in detaining a long-term resident who came to this country as a child, who has been granted employment authorization under DACA, and who has no criminal record is minimal. Respondents deprived Petitioner of his liberty without the process the Constitution requires.

96. Petitioner is therefore entitled to immediate release.

**E. Remedy**

97. The remedy in this case should be release from custody, and not a bond hearing.

98. Because Petitioner's detention has been unlawful from the outset, the central district has concluded in the past that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr.*, No. ED CV 26-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026) (underlining omitted). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

99. Petitioner does not, by this Petition, seek suppression of evidence or termination of removal proceedings. He challenges the lawfulness of his present physical custody, which is the product of Respondents' unlawful stop and warrantless arrest. Cf. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984) (addressing whether an unlawful arrest bars subsequent deportation proceedings).

## <u>COUNT THREE</u>

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) – Arbitrary and Capricious Agency Action and Abuse of Discretion

100. Petitioner repeats, re-alleges, and incorporates by reference the foregoing allegations as though fully set forth herein. This claim is pleaded in addition and in the alternative to Petitioner's claim for habeas relief under 28 U.S.C. § 2241.

101. The Administrative Procedure Act directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

102. Respondents' decision to arrest and detain Petitioner is final agency action. It marks the consummation of the agency's decision-making on whether to take Petitioner into custody, and it is an action by which rights and obligations have been determined and from which legal consequences flow: Petitioner has lost his physical liberty. See *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

103. Review is not barred. Petitioner does not challenge a decision to commence proceedings, adjudicate a case, or execute a removal order. 8 U.S.C. § 1252(g) is read narrowly and applies only to those three discrete actions. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Section 1252(b)(9) does not bar challenges to the lawfulness of detention, and § 1226(e) does not bar challenges to the statutory and constitutional framework governing detention. *Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018) (plurality opinion); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

104. Agency action is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency must articulate a rational connection between the facts found and the choice made, *id.*, and its action must be judged on the reasons it gave at the time, not on post hoc rationalizations. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20–21 (2020).

105. Respondents' decision to arrest Petitioner was not the product of reasoned decision-making. The officers did not ask whether he had DACA, employment authorization, or any other status before intercepting and arresting

him. An agency that does not ascertain a person's status before arresting him cannot have considered any relevant factor, let alone articulated a rational connection between the facts and its choice to seize him.

106. Respondents also failed to consider the most important aspects of the problem: Petitioner's approximately twenty-six years of continuous residence since the age of six; DHS's own prior grant of employment authorization under DACA and his pending DACA application; the reliance interests that DACA recipients have developed, see *Regents*, 591 U.S. 1; his steady employment and tax filings; his lack of any criminal record; and his community ties. These facts go to the heart of whether detention serves any legitimate purpose. Respondents ignored them.

107. Respondents have articulated no reasoned explanation for arresting Petitioner. No warrant was presented, no basis for the arrest was stated, and no individualized determination of flight risk or danger was communicated to him. Agency action must be judged on the reasons the agency gave at the time, *Regents*, 591 U.S. at 20–21, and here there were none. An agency that seizes a person after following him for ten to twenty minutes, without asking a single question about his status, has articulated no rational connection between the facts found and the choice made. *State Farm*, 463 U.S. at 43.

108. To the extent Respondents exercised discretion in deciding to arrest Petitioner without a warrant and to continue detaining him, that discretion was abused. Discretion exercised without inquiry, without consideration of the relevant facts, and in disregard of the governing statutory and regulatory limits is not a lawful exercise of discretion.

109. The Court should hold unlawful and set aside Respondents' decision to arrest and detain Petitioner, 5 U.S.C. § 706(2)(A), and order his release.

/ / /

/ / /

/ / /

## COUNT FOUR

**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), and (D) – Agency Action Not in Accordance with Law, in Excess of Statutory Authority, and Without Observance of Procedure Required by Law**

110. Petitioner repeats, re-alleges, and incorporates by reference the foregoing allegations as though fully set forth herein. This claim is pleaded in addition and in the alternative to Petitioner's claim for habeas relief under 28 U.S.C. § 2241.

111. The APA requires reviewing courts to hold unlawful and set aside agency action that is "not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C); or taken "without observance of procedure required by law," *id.* § 706(2)(D). Respondents' arrest and detention of Petitioner fails each standard.

**A. Not in Accordance with Law – 5 U.S.C. § 706(2)(A)**

112. Respondents' arrest of Petitioner was contrary to 8 U.S.C. § 1226(a), which permits arrest and detention only "[o]n a warrant issued by the Attorney General"; contrary to 8 U.S.C. § 1357(a)(2), which permits warrantless arrest only upon reason to believe the person is likely to escape before a warrant can be obtained; contrary to 8 C.F.R. § 287.8(b)(2) and (c)(2); and contrary to the injunction entered in *Vasquez Perdomo v. Noem*. Petitioner was never shown or provided a warrant, and Respondents made no individualized determination of likelihood of escape. Agency action taken in violation of a statute, a regulation, and a court order is not in accordance with law.

**B. In Excess of Statutory Authority – 5 U.S.C. § 706(2)(C)**

113. An agency has only the authority Congress has conferred. Congress conferred warrantless civil arrest authority on immigration officers only within the limits of § 1357(a)(2). *Arizona*, 567 U.S. at 407–08. In determining the scope of

that authority, this Court exercises its independent judgment and owes no deference to any agency interpretation that would expand it. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). By arresting Petitioner without a warrant and outside the § 1357(a)(2) exception, Respondents acted in excess of their statutory authority.

114. To the extent Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), see *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), that position also exceeds Respondents' statutory authority. Section 1225(b)(2)(A) applies to an applicant for admission who is "seeking admission." Petitioner has resided in the interior of the United States for approximately twenty-six years, since he was six years old, and was arrested while driving to work; he was not seeking admission at the border or a port of entry. Noncitizens arrested in the interior are detained, if at all, under § 1226(a), which entitles them to an individualized custody determination and a bond hearing. 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d); see *Jennings*, 583 U.S. at 288–89.

**C. Without Observance of Procedure Required by Law – 5 U.S.C. § 706(2)(D)**

115. An agency is bound to follow its own regulations, and action taken in violation of them is unlawful. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974).

116. DHS's regulations required Respondents to: (1) obtain a warrant of arrest absent reason to believe Petitioner was likely to escape before one could be obtained, 8 C.F.R. § 287.8(c)(2)(ii); (2) have any warrant issued only by an authorized supervisory officer, 8 C.F.R. §§ 236.1(b)(1), 287.5(e)(2); (3) identify themselves as immigration officers and state that Petitioner was under arrest and the reason for the arrest, 8 C.F.R. § 287.8(c)(2)(iii); (4) have reasonable suspicion based on specific articulable facts before detaining him for questioning, 8 C.F.R. §

287.8(b)(2); and (5) make a determination within forty-eight hours of a warrantless arrest whether he would remain in custody or be released, 8 C.F.R. § 287.3(d); see also 8 C.F.R. § 236.1(c)(8).

117. Respondents disregarded these required procedures. No warrant was shown, served, or provided; no individualized likelihood-of-escape determination was made; Petitioner's vehicle was stopped without reasonable suspicion based on specific articulable facts; and Petitioner was not asked whether he had DACA, employment authorization, or any other status before being taken into custody.

118. Because Respondents' arrest and detention of Petitioner was not in accordance with law, exceeded their statutory authority, and was undertaken without observance of procedures required by law, the Court should hold it unlawful and set it aside under 5 U.S.C. § 706(2)(A), (C), and (D), and order Petitioner's release.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Issue an order directing Respondents to show cause within three days why the writ should not be granted, 28 U.S.C. § 2243;

c. Order that Respondents shall not transfer Petitioner outside the Central District of California while this Petition is pending;

d. Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from unlawful immigration custody on the same terms that existed before his detention;

e. Order that Petitioner's release shall not be conditioned upon placement on electronic or GPS monitoring, including the use of an ankle monitor;

f. Award fees and costs only to the extent expressly authorized by applicable law and satisfied procedural prerequisites, including the Equal Access to Justice Act where available; and

g. Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: 11/10/2026

*/s/ Ron Quijada*

Ron Quijada (SBN: 363726)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of Petitioner as counsel for Petitioner. I have reviewed the facts described in the Petition with Petitioner. Based on those discussions, I verify that the factual statements in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Respectfully Submitted,

Dated: 11/10/2026

*Ron Quijada*

Ron Quijada (SBN: 363726)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com

# LIST OF EXHIBITS

**Exhibit 1 – Employment Authorization Document (DACA)**

**Exhibit 2 – Pending DACA Application**

**Exhibit 3 – Proof of Residence**

**Exhibit 4 – High School Diploma**

**Exhibit 5 – Income Tax Returns and Forms W-2**

**Exhibit 6 – Church Certificate**